UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JAMES FILARDI, COURTNEY ANDERSEN, LISA BURMEISTER, KENNETH LEONARD, DOROTHY PETERSEN, STEPHANIE RANEY, IRENE NUNEZ, CONRADO MOREIRA, KIARA REED, NACOLE HOUSTON, MONIKA BENNETT, JASON JARRELL, ALISON BARNHILL, KIMBERLEE FERRIS, JEFFREY GOULD, MELISSA SWARINGEN-ORTON, MICHELLE RUBIANO, and COLEMAN STEPHENS** on behalf of themselves and all others similarly situated,<br><br>            **Plaintiffs,**<br><br>v.<br><br>**MID-AMERICA PET FOOD, L.L.C.**<br><br>            **Defendant.** | Case No. 7:23-cv-11170-NSR |

### DECLARATION OF JEFFREY S. GOLDENBERG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND <u>APPROVAL OF NOTICE PLAN</u>

I, Jeffrey S. Goldenberg, Esq., hereby declare under penalty of perjury and pursuant to 28 U.S.C. 1746, as follows:

1. I am a partner and founder in the law firm Goldenberg Schneider, LPA, and I am one of the Lead Counsel for Plaintiffs and the Class in this litigation. I make this Declaration of my own personal knowledge, and if called to do so, I could testify competently to the matters stated herein.

2. I graduated Phi Beta Kappa from Indiana University, Bloomington, Indiana in 1988 (B.A. Biology) and received my law degree from Indiana University in 1994. I also received a

1

master's degree in environmental science from Indiana University in 1994. I am admitted to the practice of law in the State of Ohio (1994), the United States Court of Appeals for the Sixth Circuit, Second Circuit, and Ninth Circuit, and the United States District Court for the Southern and Northern Districts of Ohio, the Central and the Northern District of Illinois, Eastern District of Michigan, and the District of Nebraska. I also have been admitted pro hac vice to various federal district courts throughout the United States. I am a member in good standing of the Ohio Bar and have never been the subject of any disciplinary proceeding.

3. I have served as lead or co-lead counsel on numerous nationwide class actions and have substantial experience litigating class actions and complex civil litigation.

4. Class Counsel are qualified and have substantial experience in class action litigation, including pet food contamination cases. I served as Co-Lead Counsel in *In Re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation*, 3:21-cv-00007 (MPB-MJD) (S.D. In.) and achieved a $6.35 million common fund class action settlement. Attached hereto as Exhibit 2 are Class Counsel's firm resumes demonstrating their qualifications and experience.

5. As Plaintiffs' Counsel, I have been intimately involved in every aspect of this litigation since its inception.

6. The Settlement of this litigation was reached when the Parties understood the strengths and weaknesses of their respective position after engaging in ample informal discovery and arm's length negotiations with the assistance of retired federal Magistrate Judge Diane M. Welsh of JAMS.

7. As part of its recall, Defendant offered a full refund to any consumer who submitted proof of purchase and also implemented a program to compensate pet owners for out-of-pocket costs and losses.

8. On November 28, 2023, Plaintiffs Andersen and Burmeiser filed a putative nationwide class action lawsuit against Mid-America in the Eastern District of Texas, captioned *Andersen v. Mid-America Pet Food, L.L.C.,* No. 5:23-cv-00140 (E.D. Tex.) (the "*Andersen* Action") asserting claims for negligence, breach of express and implied warranties, fraudulent concealment, unjust enrichment, and violation of several state consumer protection laws.

9. That case was followed by *Jackson v. Mid-America Pet Food, L.L.C*., No. 5:23-cv-00153 (E.D. Tex.) (the "*Jackson* Action"), and *Barnhill v. Mid-America Pet Food, L.L.C*, No. 5:24-cv-00046 (E.D. Tex.) (the "*Barnhill* Action"), each of which brought similar claims on behalf of a nationwide class and various state classes of consumers who purchased one or more Mid-America Pet Food Product subject to the Recall.

10. On December 22, 2023, Plaintiff Filardi filed the instant action, *Filardi v. Mid-America Pet Food, LLC*, No 7:23-cv-11170 (S.D.N.Y.) (the "*Filardi* Action"), seeking to certify class of New York purchasers of Mid-America Pet Food and statutory damages for violation of New York General Business Law sections 349 and 350.

11. On, January 25, 2024, the *Andersen*, *Jackson*, and *Barnhill* Actions were consolidated before Judge Robert W. Schroeder, III of U.S. District Court for the Eastern District of Texas, and on February 15, 2024, Plaintiffs filed a consolidated class action complaint in the *Andersen* Action.

3

12. On April 19, 2024, this Court, and the Court in the *Andersen* Action entered orders staying the litigations pending a decision on Defendant's anticipated motion to dismiss in the *Andersen* Action and the mediation between the Parties.

13. On September 10, 2024 following the mediation, the Parties informed the Court that they had reached a resolution and requested permission to lift the stay and file a consolidated amended complaint and a motion for preliminary approval, which the Court granted. On the same day, Plaintiffs filed a consolidated amended complaint to implement the settlement.

14. The Settlement is the result of extensive arm's-length negotiations between the Parties and their counsel.

15. Class Counsel worked cooperatively to coordinate the litigation, to save judicial resources, and to lead the litigation to mediation and an early resolution.

16. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.

17. Class Counsel also conducted a detailed and extensive analysis of the claims alleged in the Complaints, including applicable statutes and regulations concerning labeling, regulatory and scientific guidelines regarding the presence of salmonella in pet food products and the scientific research concerning the dangers of salmonella. Additionally, Plaintiffs anticipate that Defendant will argue that damages in this matter would be extremely limited because only a very minimal amount of the Covered Products were actually at risk of being contaminated and a significant portion of the potentially contaminated products never made it into the hands of

consumers. As a result of the recalls, hundreds of thousands of bags of Covered Products were removed from retail stores prior to sale and destroyed.

18. Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

19. Class Counsel investigated the relevant marketplace to understand the potential scope of this matter, as well as marketing practices and patterns, and sales trends, for the pet food products industry.

20. Based on the Parties' exchange of discovery and their respective investigations into the relevant claims and defenses, they agreed to engage in settlement negotiations with Mediator Welsh.

21. In connection with the mediation, Class Counsel obtained significant discovery from Defendant in order to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Importantly, this included Defendant's production of detailed financial, operational, and transactional records.

22. Plaintiffs also conducted their own due diligence regarding the measures Defendant put in place after the contamination was discovered. This information was critical to Plaintiffs' determination that the cause of the contamination has been contained and procedures were put in place to prevent future contamination.

23. Importantly, the settlement negotiations were conducted at arm's-length over a period of several weeks.

24. Both Class Counsel and counsel for Defendant are experienced in class action litigation.

25. On August 16, 2024, the Parties participated in an all-day mediation with retired federal Magistrate Judge, Diane M. Welsh of JAMS. With Judge Welsh's assistance, the Parties reached an agreement in principle at the mediation session. The Parties continued to pursue settlement discussions for several more weeks, culminating in the attached Settlement Agreement, which is attached hereto as Exhibit 1.

26. The Settlement was reached when the Parties understood the strengths and weaknesses of their respective position after engaging in ample informal discovery and arm's length negotiations with the assistance of Judge Welsh. Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including obtaining extensive sales, distribution, and marketing information regarding the Mid America Pet Food Products, Defendant's historical and current financial condition, and the improvements and protocols put in place by Defendant to prevent future contamination.

27. The Parties did not discuss Attorneys' Fees and Costs or any potential Service Award until they first agreed on the substantive terms of this Settlement. Plaintiffs' Counsel plans to apply for attorneys' fees in the amount of one-third of the Settlement Fund. As to any agreement required to be identified by Rule 23(e)(3) or any agreement made in connection with the proposal, no such agreement exists in this case other than the Settlement Agreement.

28. I believe that the relief the Settlement provides is within the range of reasonableness, especially considering all the attendant risks of litigation. The cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' potential best result at trial. Given that only a limited number of Mid-America Pet Food Products were actually at risk of contamination and considering the non-monetary relief ($7 million worth of business practice changes and capital improvements to its food safety programs), the Settlement

provides substantial relief, strongly supporting preliminary approval. Further, the Plan of Allocation in the Settlement Agreement is designed to ensure that Settlement Class Members who submit valid documented claims will receive close to 100% of their documented damages.

29. The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan. Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and vetted Angeion and its proposed notice plan for this Settlement. Class Counsel selected Angeion based on its reputation and experience administering similar consumer class actions.

30. The Notice Plan will include a detailed digital notice campaign, an email notice, a long form notice and a settlement website that will be designed to accept and process claims electronically. The notices shall include, among other information: a description of the material terms of this Settlement; a date by which Settlement Class Members may object to this Settlement; a date by which Settlement Class Members may exclude themselves from this Settlement, the date upon which the Final Approval Hearing shall occur and the address of the Settlement Website at which Settlement Class Members may access this Settlement and other related documents and information and file claims. The notices and claim form are attached as Exhibits A and B to the Settlement Agreement.

31. I believe the robust proposed Notice Plan satisfies due process and the Federal Rules of Civil Procedure. The proposed methods for providing notice to the Settlement Class Members are reasonable, designed to reach 80% of the Settlement Class, and utilize the best practicable and economically efficient means available. A website and toll-free number will be established to inform consumers of the Settlement, and a digital advertising campaign targeting

Settlement Class Members will be used to drive them to the Settlement Website. In addition, direct mail and email notice will be issued to those for whom such information is reasonably available.

Executed on November 15, 2024.

/s/ Jeffrey S. Goldenberg

JEFFREY S. GOLDENBERG, ESQ.