## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES FILARDI, COURTNEY ANDERSEN, LISA BURMEISTER, KENNETH LEONARD, DOROTHY PETERSEN, STEPHANIE RANEY, IRENE NUNEZ, CONRADO MOREIRA, KIARA REED, NACOLE HOUSTON, MONIKA BENNETT, JASON JARRELL, ALISON BARNHILL, KIMBERLEE FERRIS, JEFFREY GOULD, MELISSA SWARINGEN-ORTON, MICHELLE RUBIANO, and COLEMAN STEPHENS on behalf of themselves and all others similarly situated, | Case No.: 23-cv-11170-NSR |

Plaintiffs,

-against-

MID AMERICA PET FOOD LLC,

Defendant.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..i-iii

Table of Authorities……………………………………………………………………iv-xi

I.    INTRODUCTION…………………………………………………………1

II.    FACTUAL AND PROCEDURAL BACKGROUND……………………………...3

    A.  Factual Background……………………………………………………3

    B.  Procedural History……………………………………………………...3

    C.  Settlement Negotiations…………………………………………………...4

III.    KEY TERMS OF THE SETTLEMENT……………………………………………4

    A.  Monetary and Non-Monetary Relief……………………………………………4

    B.  The Release……………………………………………………………..5

    C.  Attorneys' Fees, Costs, and Service Awards…………………………………5

IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE…6

    A.  Numerosity………………………………………………………………...6

    B.  Commonality……………………………………………………………6

    C.  Typicality………………………………………………………………7

    D.  Adequacy………………………………………………………………8

    E.  The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)……..9

        1.  *Common Legal and Factual Questions Predominate In This Action*…………9

        2.  *A Class Action Is A Superior Mechanism For Adjudication*…………………..9

V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS………………………10

VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE……………….11

    A.  The *Grinnell* Factors……………………………………………………...12

     1. *Litigation Through Trial Would be Complex, Costly, And Long*……………..12

     2. *The Reaction Of The Class Is Overwhelmingly Positive*……………………13

         a. *The Two Objections are Fraudulent and Meritless*………………………13

            i. *Indicia of Fraud Associated with Mr. Spaci and Mr. Sussman*…..15

            ii. *The Objectors Do Not Have Standing to Make Their Objections*.15

            iii. *Mr. Spaci's and Mr. Sussman's Objections are Meritless*………...17

Spaci's First Objection – Reimbursement Caps and Equitable Treatment of Class Members…..17

Spaci's Second and Sixth Objections – Angeion's Fraud Detection Process………...…………18

Spaci's Third Objection – Appeal Rights………………………………………………...20

Spaci's Fourth and Fourteenth Objections – Distribution of Unclaimed Funds to *Cy Pres*……..21

Spaci's Fifth Objection – Attorneys' Fees………………………………………………22

Spaci's Seventh Objection – Angeion's Error Message…………..………………………24

Spaci's Eighth Objection – Adequacy of the Fund………………………………………25

Spaci's Ninth Objection – Adequacy of the Notice Program…………………………………26

Spaci's Tenth Objection – Angeion's Alleged Kick Backs…………………………………26

Spaci's Eleventh Objection – Service Awards……………………………………………...27

Spaci's Twelfth Objection – Updates Regarding Claims Data……………………………...27

Spaci's Thirteenth Objection – Plaintiffs' Signatures on the Settlement Agreement……………28

Spaci's Fifteenth Objection – Use of Postmarks……………………………………………28

Spaci's Sixteenth Objection – The Definition of the Class…………………………………28

Spaci's Seventeenth Objection – The Waiver of California Code Section 1542………………..29

Spaci's Eighteenth Objection – The Privacy Policy………………………………………..30

Spaci's Nineteenth Objection – The Objection Procedure……………………………………30

Spaci's Twentieth Objection and Sussman's Objection – Entity Claims..................................31

       3.   *The Stage of The Proceedings And The Amount of Discovery Completed*.....32

       4.   *The Risks of Establishing Liability And Damages*................................33

       5.   *The Risk of Maintaining Class Action Status Through Trial*....................34

       6.   *The Ability of Defendant To Withstand Greater Judgment*......................35

       7.   *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation* .....35

    B.  The Rule 23(e)(2) Factors.................................................................38

       1.   *Class Counsel and Plaintiffs Adequately Represented The Class*.............38

       2.   *The Settlement Was Negotiated At Arm's Length*................................38

       3.   *The Settlement Provides Adequate Relief To The Class*........................38

       4.   *The Settlement Treats All Class Members Equally*..............................40

VII.    CONCLUSION...........................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011)..................................................................25

*Ansari v. New York University*,
  2018 WL 3715273 (S.D.N.Y. 1998).........................................................8

*Augustin v. Jablonsky*,
  461 F.3d 219 (2d Cir. 2006)..................................................................9

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche
  Bank*, 236 F.3d 78 (2d Cir. 2001) .................................................12, 34

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013)................................................................18

*Bangoura v. Beiersdorf, Inc.*,
  Case No. 1:22-cv-00291-BMC (E.D.N.Y) (Cogan, J.).........................2, 33

*Brooks v. Thomson Reuters Corp.*,
  3:21-cv-01418-EMC-KAW (N.D. Cal.) ..................................................27

*Cabrera, et. al. v. Google, LLC*,
  5:11-cv-01263-EJD (N.D. Cal.).............................................................27

*Catalano v. Lyons Magnus, LLC*,
  Case No. 7:22-cv-06867 (S.D.N.Y. 2024) (Karas, J.) .......................2, 33

*Catalano v. Lyons Magnus, LLC*,
  No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) ......................................23

*Cates v. Trustees of Columbia Univ. in City of New York*,
  2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ........................................23

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  No. CV 17-2832, 2020 WL 7133805 (D. Minn. Dec. 4, 2020)...............18

*Chambers v. Whirlpool Corp.*,
  2016 WL 9451360 (C.D. Cal. Aug. 12, 2016).......................................15

*Chavarria v. New York Airport Service, LLC*,
  875 F.Supp.2d 164 (2012) ..................................................................27

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*Collins v. Quincy Bioscience, LLC*,
   2020 U.S. Dist. LEXIS 218673 (S.D. Fla. Nov. 16, 2020)......................................17

*Contant v. AMA Cap., LLC*,
   66 F.4th 59 (2d Cir. 2023) ...........................................................................24

*D.S. v. New York City Dep't of Educ.*,
   255 F.R.D. 59 (E.D.N.Y. 2008)......................................................................33

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993).....................................................................21

*In re Drexel Burnham Lambert Grp., Inc.*,
   130 B.R. 910 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992)...........................16

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)....................................................................................10

*In re Excess Value Ins. Coverage Litig.*,
   No. M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ...........................21

*In re: Facebook, Inc. Consumer Privacy User Profile Litigation*,
   Case No. 3:18-md-02843-VC (N.D. Cal.) ........................................................27

*In re Fat Brands Inc. SEC Litig.*,
   2025 U.S. Dist. LEXIS 144490 (C.D. Cal. Jun. 17, 2025) ....................................21

*Ferrick v. Spotify USA Inc.*,
   2018 WL 2324076 (S.D.N.Y. May 22, 2018) ....................................................39

*Filardi, et al. v. Mid America Pet Food, LLC*,
   Case No. 23-cv-1170 ...............................................................................5, 6

*First Albany Corp. v. Am. Integrity Corp.*,
   2015 U.S. Dist. LEXIS 164559 (E.D. Pa. Dec. 8, 2015)......................................22

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013)......................................................................17

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..............................................................8, 36

*General Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)....................................................................................8

*Goldberger v. Integrated Resources*, Inc.
209 F.3rd 43, 50 (2000)……………………………………………………………………24

*Goldstein v. Henkel Corporation et al.*,
Case No. 3:22-cv-00164-AWT (D. Conn.)......................................................................2

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968).........................................................................................10

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................................38, 39

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3pd.........................................................................................................40

*Hart v. BHH, LLC*,
2017 WL 2912519 (S.D.N.Y. July 7, 2017).....................................................................7

*Hernandez v. Uzzal Pizzeria, Inc.*,
2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)...................................................................40

*Hesse v. Godiva Chocolatier, Inc.*,
No. 1:19-CV-0972-LAP, 2022 WL 22895466 (S.D.N.Y. Apr. 20, 2022) ...........................21

*Hollingsworth v. Perry*,
570 U.S. 693 (2013).....................................................................................................31

*Huertas v. Bayer US LLC*,
120 F.4th 1169 (3d Cir. 2024) .....................................................................................29

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022) .........................................................................................21

*In re Initial Pub. Offering Sec. Litig.*,
2011 U.S. Dist. LEXIS 103698 (S.D.N.Y. Aug. 25, 2011)................................................17

*In re Initial Public Offering Sec. Litig.*,
728 F. Supp. 2d 289 (S.D.N.Y. 2010)...........................................................................14

*In re Ivan F. Boesky Sec.*,
948 F.2d 1358 (2d Cir. 1991).......................................................................................14

*Jimenez v. Artsana USA, Inc.*,
No. 7:21-cv-07933-VB (S.D.N.Y.).................................................................................19

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).........................................27

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
    333 F.R.D. 314 (S.D.N.Y. 2019) ...................................................................12

*Kessler v. The Quaker Oats Co.*
    Case No: 24-cv-526-KMK (S.D.N.Y) (ECF No. 72, transcript of Final
    Approval Hearing) ................................................................................... *passim*

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015).....................................................................18

*Kornell v. Haverhill Ret. Sys.*,
    790 F. App'x 296 (2d Cir. 2019) ....................................................................24

*Kurtz* v. *Kimberly-Clark Corp.*,
    142 F.4th 112 (2d. Cir. 2025) ........................................................................22

*Leonard v. John Hancock Life Ins. Co. of N.Y.*,
    2022 U.S. Dist. LEXIS 31689 (S.D.N.Y. Jan. 10, 2022)...............................31

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    327 F.R.D. 483 (S.D.N.Y. 2018) ...................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................31

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)........................................................................6, 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................................11

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. 2012)..............................................................14

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007).....................................................................36, 39

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) .....................................................................9

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y.2006) ....................................................................27

*McGreevy v. Life Alert Emergency Response, Inc.*,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017)............................................................24

*In re Medstar Health Data Sec. Incident*,
    2025 U.S. Dist. LEXIS 203633 (D. Md. Jun. 16, 2025)................................31

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)..............................................................10, 40

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................13

*In re Midwestern Pet Foods Mktg., Sales Practices, Sales Practices & Product
  Liability Litig.*,
  No. 3:21-cv-00007 (S.D. Ind.) ...............................................................................37

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ....................................................................................36

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).....................................................................................36

*In re Novartis*,
  2024 U.S. Dist. LEXIS 132677 (S.D.N.Y. Jul. 26, 2024) ......................................19

*NV Sec., Inc. v. Fluke Networks*,
  No. CV05–4217 GW (SSX), 2010 WL 11512406 (C.D. Cal. Feb. 8, 2010) ...........18

*Ortiz v. Fibreboard Corp.*,
  527 U.C. 815 (1999)………………………………………………………………18

*In re PaineWebber*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................34

*Patellos v. Hello Products, LLC*,
  2022 WL 2159566 (S.D.N.Y. June 15, 2022) ........................................................40

*Patora v. Colgate-Palmolive Co.*,
  No. 7:23-cv-01118-VB (S.D.N.Y.)...........................................................................2

*Patora v. Tarte, Inc.*,
  Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J)................................................33

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................33

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D..............................................................................................................39, 40

*In re Petrobras Secs. Litig.*,
  2018 U.S. Dist. LEXIS 161898 (S.D.N.Y. Sep. 19, 2018).....................................14

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)................................................................................................26

*Pls' Consumer Class v. Hyundai Motor Co.*,
  No. 24-7080, 2026 WL 64285 (9th Cir. Jan. 8, 2026) ....................................................31, 32

*Pollard v. Remington Arms Co., LLC*,
  No. 13-0086-CV-W-ODS, 2016 WL 9526451 (W.D. Mo. Feb. 24, 2016) ...........................26

*Pompilio v. Boar's Head Provisions Co. Inc.*,
  No. 7:24-cv-08220-PMH (S.D.N.Y.) (Halpern, J.) ....................................................3, 23, 33

*Rapoport-Hecht v. Seventh Generation*,
  Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) .......................................................33

*In re Remicade Antitrust Litig.*,
  No. 17-CV-04326, 2023 WL 2530418 ......................................................................21

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ....................................................................................8

*Rodriguez v. CPI Aerostructures, Inc.*,
  2023 U.S. Dist. LEXIS 26891 (E.D.N.Y. Feb. 16, 2023) .........................................37

*Rose v. Travelers Home & Marine Ins. Co.*,
  No. CV 19-977, 2020 WL 4059613 (E.D. Pa. July 20, 2020) .................................18

*Sanborn v. Viridian Energy, Inc.*,
  2018 U.S. Dist. LEXIS 25639 (D. Conn. Feb 16, 2018) ........................................19

*Shaya Eidelman v. Sun Prods. Corp.*,
  2022 U.S. App. LEXIS 15480 (2d Cir. 2022) .......................................................35

*In re Sinus Buster Prods. Consumer Litig.*,
  2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .......................................................35

*Springer v. Johnson*,
  2026 U.S. Dist. LEXIS 2848 (D.R.I. Jan. 5, 2026) ..............................................31

*Swetz v. The Clorox Company*,
  Case No. 22-CV-9374 (S.D.N.Y.) ......................................................................2, 23, 33

*Tart v. Lions Gate Entertainment Corp.*,
  No. 14-CV-8004 (AJN), 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) ..................10

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982) .................13

*In re Telescopes Antitrust Litig.*,
  2025 U.S. Dist. LEXIS 70066 (N.D. Cal. Apr. 11, 2025) .....................................19, 30

*In re Telescopes Antitrust Litig*
(N.D. Cal.).................................................................................................................15

*Thornton v. Mindvalley, Inc.*,
2025 U.S. Dist. LEXIS 269267 (C.D. Cal. Apr. 10, 2025) ....................................31

*Trinidad v. Pret a Manger (UDS) Ltd.*,
2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)........................................................40

*In re Vitamin C*,
2012 WL 5289514 ..................................................................................................34

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................12, 30

*Willix v. Healthfirst, Inc.*,
2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011).........................................................34

*Wright v. Stern*,
553 F.Supp.2d 337 (S.D.N.Y. 2008)......................................................................27

**Statutes**

California Code Section 1542 ...........................................................................................30

Class Action Fairness Act ...............................................................................................11

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Plaintiffs James Filardi, Courtney Andersen, Lisa Burmeister, Glenn Jackson, Kenneth Leonard, Dorothy Petersen, Stephanie Raney, Irene Nuñez, Conrado Moreira, Kiera Reed, Nacole Houston, Monika Bennett, Jason Jarrell, Alison Barnhill, Kimberlee Ferris, Jeffrey Gould, Melissa Swaringen-Orton, Michelle Rubiano and Coleman Stephens (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement.

## I.    INTRODUCTION

On September 23, 2025, this Court preliminarily approved the class action settlement between Plaintiffs and Defendant Mid America Pet Food, LLC ("Mid America" or "Defendant") and directed that notice be sent to the Settlement Class.[1] ECF No. 50. The settlement administrator, Angeion Group ("Angeion") has implemented the Court-approved notice plan that reached an estimated 83.47% of the Settlement Class.[2]  The reaction from the Settlement Class has been overwhelmingly positive. To date, 47,775 Class Members submitted claims, 13,811 of which were Pet Injury Claims, and 46,898 of which were Food Purchase Claims.  *See* Weisbrot Decl., ¶ 21. Only two claimants have objected, both of whom appear to be serial objectors who lack standing and bear significant indicia of fraud as explained in the Declaration of Derek Burrows of Angeion Group, LLC Re: Fraud Detection and Prevention ("Burrows Decl."), filed concurrently.  No Settlement Class Members requested to be excluded.[3]  As discussed below, one of these objections

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. ECF No. 45-1.  References to "SA §" are to sections in the Settlement Agreement and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[2] *See* Declaration of Steven Weisbrot ("Weisbrot Decl."), ¶ 28 filed concurrently. The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

[3] *See* Weisbrot Decl. ¶ 23.  The claims period concludes on February 5, 2026.  Class Counsel will provide an update regarding the number of claims at the February 6, 2026 Final Approval hearing.  The deadline for Class Members to submit objections or requests for exclusions expired on January 6, 2026.

(ECF No. 55, objection of Mike Sussman) only takes issue with the administrative procedure for making claims, rather than the substance of the settlement or amount of attorneys' fees and expenses being sought.  The other objection (ECF No. 54, objection of Zef Spaci) raises a host of meritless complaints that have consistently been denied by courts in this Circuit, including by Judge Karas in *Kessler v. The Quaker Oats Co*. Case No: 24-cv-526-KMK (S.D.N.Y) ("*Quaker*") (ECF No. 72, transcript of Final Approval Hearing).[4]

The Settlement is an excellent result and the Court should grant final approval.  First, the Settlement's strength speaks for itself: it creates a $5.5 million non-reversionary common fund from which each Settlement Class Member who submits a Valid Pet Injury or Food Purchase Claim (or both) will receive a cash payment.  Second, Plaintiffs also obtained significant non-monetary relief.  Specifically, as a result of this litigation and the voluntary recalls, Defendant has implemented approximately $7 million in safety-related sourcing, processing, manufacturing, and personnel enhancements designed to avoid future product contamination.  Here, the total value of the settlement can be calculated by adding the $5.5 million common fund to the approximately $7 million in food safety-related enhancements designed to prevent future product contamination.  Notably, this Settlement falls squarely within or above the range established by previous, similar settlements concerning the contamination of consumer products in the Southern and Eastern Districts of New York.[5]

---

[5] *See, e.g.*, *Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-00291-BMC (E.D.N.Y) (Cogan, J.) ($2.3MM common fund); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) ($1.95MM common fund); *Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) ($5.65 million common fund); *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J) ($1.925 common fund); *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867 (S.D.N.Y. 2024) (Karas, J.) ($3.5 million common fund); *Kessler v. The Quaker Oats Co*. Case No: 24-cv-526-KMK (S.D.N.Y.) (Karas, J.) ($6.75 million common fund); *Pompilio v. Boar's Head Provisions Co. Inc.*, No. 7:24-cv-08220-PMH (S.D.N.Y.) (Halpern, J.) ($3.1 million common fund).

For these reasons, and as explained below, the Settlement is fair, reasonable, and adequate, and warrants final approval.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiffs are purchasers of recalled Mid America Pet Food Products. Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Mid America Pet Food Products, which Plaintiffs allege Defendant manufactured and distributed and which contained or were at the risk of containing the bacteria *Salmonella*. ECF No. 16. Defendant denies Plaintiffs' allegations and denies all liability or wrongdoing whatsoever. Nevertheless, Defendant agreed to enter into this Settlement Agreement to avoid possible further expenses, burdens, and distractions of litigation.  SA § 9.1.

### B.    Procedural History

As set forth in the accompanying Declaration of Jason Sultzer ("Sultzer Decl.") and Plaintiffs' Preliminary Approval papers (ECF Nos. 44 & 45), before commencing the litigation, Class Counsel discussed the case with dozens of potential named plaintiffs and extensively investigated and analyzed, the factual and legal claims underlying the litigation.  Sultzer Decl., ¶ 12.  Moreover, Class Counsel undertook an extensive investigation into the bacterial contamination or risk of bacterial contamination which included testing and screening for *Salmonella*, and prepared for protracted litigation. *Id.*

Starting on November 28, 2023, Plaintiffs filed four separate actions against Defendant asserting claims for negligence, breach of express and implied warranties, fraudulent concealment, unjust enrichment, and violation of several state consumer protection laws.  *Id.* at ¶¶ 13-17.  Class

Counsel worked cooperatively to coordinate the litigation, file an Amended Consolidated Class Action Complaint (ECF No. 16) in the instant action, and to lead the case to mediation and an early resolution. *Id*. at ¶ 18.

### C.    Settlement Negotiations

The Settlement is the result of extensive arm's-length negotiations between the Parties and counsel. Sultzer Decl. at ¶¶ 21-26. Based on the Parties' exchange of discovery and their respective investigations into the relevant claims and defenses, they agreed to engage in settlement negotiations with the Honorable Diane M. Welsh (Ret.). *Id*. at ¶ 21. In connection with the mediation and settlement negotiations, Class Counsel conducted additional discovery from Defendant in order to be in a position to negotiate a settlement that would be fair, reasonable, and adequate. Defendant's additional production included detailed financial, operational, and transactional records and information regarding the financial impact to Defendant of the voluntary recalls. *Id*.[6] Plaintiffs also conducted their own due diligence regarding the measures Defendant put in place after the contamination was discovered. This information was critical to Plaintiffs' determination that the cause of the contamination had been addressed and procedures had been implemented to minimize the likelihood of future contamination. *Id*. at ¶ 22. On August 16, 2024, the Parties participated in an all-day mediation with Judge Welsh. *Id*. ¶ 24. With Judge Welsh's assistance, the Parties reached an agreement in principle at the mediation . The Parties continued discussions for several more weeks, culminating in the attached Settlement Agreement.[7] *Id*. ¶ 25.

## III.    KEY TERMS OF THE SETTLEMENT

### A    Monetary and Non-Monetary Relief

---

[6] The Parties will provide this same financial and operational information to the Court for in camera inspection if the Court so requests.

[7] The Parties did not discuss Attorneys' Fees and Costs or any potential Service Award until they first agreed on the substantive terms of this settlement. Sultzer Decl. ¶ 27.

Defendant shall pay or cause to be paid $5,500,000.00 (the "Settlement Fund") into a non-reversionary common fund to reimburse Settlement Class Members who make Pet Injury Claims and/or Food Purchase Claims.[8]  Details regarding the compensation for Class Members who submit each type of claim is set forth in the Sultzer Declaration, as well as Plaintiffs' Preliminary Approval papers. *See* ECF Nos. 44 & 45.

Mid America further represents and agrees that it has spent approximately $7 million dollars to implement certain business practice changes and capital improvements to its food safety programs as a result of the recalls and this litigation.  SA § IV, ¶ 7.

### B.    The Release

Plaintiffs and Settlement Class Members will release all known claims and Unknown Claims to the fullest extent permitted by law against the Defendant related to the recalls, as alleged in *Filardi, et al. v. Mid America Pet Food, LLC*, Case No. 23-cv-1170 and the Texas Actions. SA § I, ¶27 (defining the "Released Claims").[9] This Release includes equitable, injunctive, and monetary claims within the scope of the Settlement Class definition. *Id*. The Release details are set forth more fully in the Settlement Agreement. *See* SA § XII.

### C.    Attorneys' Fees, Costs, and Service Awards

On December 16, 2025, Class Counsel filed with the Court an application for an award of attorneys' fees of $1,833,150, one-third of the Settlement Fund, as well as reimbursement of the $35,000 in reasonable litigation expenses incurred in the prosecution of the Action.  ECF Nos. 51-

---

[8] The "Settlement Class" or "Settlement Class Members" is defined as: "all persons and entities residing in the United States who purchased one or more of the Mid America Pet Food Products." SA § I, ¶ 32. ,"Mid America Pet Food Products" means the pet foods listed in Exhibit D which is available on the settlement website – www.midamericapetfoodsettlement.com (see Important Documents link).

[9] The Settlement Agreement also releases claims against the Mid America Released Parties defined as "(i) Defendant; (ii) its past, present, and future parents, subsidiaries, affiliates, partners, members, insurers, divisions, predecessors, successors, successors-in-interest, and assigns; and (iii) for each of Defendant and the entities listed in (ii), their respective officers, directors, investors, members, employees, attorneys, controlling persons, advisors, consultants, accountants, auditors, and agents." SA §I, ¶ 19.

53. Class Counsel also sought approval of a service award of $10,000 for Plaintiff Nuñez and $5,000 for each of the remaining named Plaintiffs. *Id.*

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified the Settlement Class for settlement purposes. ECF No. 50. Under Fed. R. Civ. P. 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted). The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that at least hundreds of thousands of people nationwide purchased the Mid America Pet Food Products. Numerosity is easily satisfied. *Id.*

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359.

6

Here, common issues of law and fact affect the Class uniformly and satisfy the commonality requirement, including: whether Defendant's alleged failure to disclose the presence or the risk of *Salmonella* in the Mid America Pet Food Products was likely to deceive reasonable consumers; whether Defendant violated the certain consumer statutes; acted negligently, breached express warranties with regard to the Mid America Pet Food Products; whether Defendant breached the implied warranty of merchantability; whether members of the Settlement Class were injured and the proper measure of their losses; whether members of the Settlement Class are entitled to damages and the amount of such damages; and whether members of the Settlement Class are entitled to declaratory, injunctive, or other equitable relief. These common questions target the same alleged conduct and would require evaluation of the question's merits under a single objective standard, *i.e.*, the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017).

## C.    Typicality

Typicality requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

In the Second Circuit, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *accord Ansari v. New York University*, 2018 WL 3715273, at *115 (S.D.N.Y. 1998). Here, the alleged injuries to Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct, and liability for Defendant's conduct is predicated on the same legal

theories. *Robidoux*, 987 F.2d 931, 936-37 (2d Cir. 1993). Like Plaintiffs, each member of the Settlement Class was exposed to the same allegedly deceptive marketing practices and purchased Products that contained or were at risk of containing *Salmonella* without intending to do so. Plaintiffs and members of the Settlement Class suffered the same alleged harm because the Mid America Pet Food Products were allegedly falsely marketed as safe for normal use when, in reality, they contained or were at the risk of potentially containing *Salmonella*.

### D.    Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol*, 126 F.3d 372, 378 (2d Cir. 1997).

Plaintiffs and their counsel are adequate. Plaintiffs do not have any conflicts with the absent class members, as their claims are coextensive with those of the Settlement Class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs possess the same interests as the Settlement Class because they have incurred the same alleged injuries, which occurred in the same manner and based on the same alleged conduct by Defendant.

Likewise, Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity. Sultzer Decl. ¶ 33; Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl.") at ¶ 4, ECF No. 45. Class Counsel regularly engages in major complex class action litigation (including pet food contamination cases), has the resources necessary to conduct

litigation of this nature, and has frequently been appointed lead class counsel by this Court and others throughout the country. *Id.*; *see also* ECF No. 53.

### E.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

#### 1.    *Common Legal and Factual Questions Predominate In This Action*

Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Plaintiffs allege that Defendant engaged in a common course of conduct. The central legal issues include whether the Mid America Pet Food Products contain or were at risk of containing *Salmonella* (and if so, whether the Mid America Pet Food Products contained or were at risk of containing harmful levels of *Salmonella*), whether Defendant knew or should have known of the alleged risk of *Salmonella* contamination, whether Defendant's alleged failure to disclose the presence or risk of *Salmonella* in the Mid America Pet Food Products was likely to deceive reasonable consumers, and whether the omissions were material. For settlement purposes, these central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *Augustin v. Jablonsky*, 461 F.3d 219, 227-28 (2d Cir. 2006).

#### 2.    *A Class Action Is A Superior Mechanism For Adjudication*

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Plaintiffs satisfy the superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues. Importantly, "[t]he potential class members are both significant in

number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart v. Lions Gate Entertainment Corp.*, No. 14-CV-8004 (AJN), 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015). In addition, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendant to resolve all claims … at once." *Id*.

## V.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections*." In re Marsh & McLennan Cos., Inc. Sec. Litig*., 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).

The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010). The notice plan here easily meets these standards, as it reached approximately 83.47% of the Settlement Class. *See* Weisbrot Decl.  ¶ 26.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 50. The Plan has now been fully carried out by Angeion. Pursuant to the Settlement, Angeion implemented a comprehensive notice program that included direct mail and email notice to those Class Members for whom email and/or mailing addresses were available and a comprehensive media notice program consisting of "internet banner advertisement notice, social media notice via Facebook and Instagram, [and] a paid search campaign via Google." *See id*. ¶¶ 6-9.[10] These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to elect to receive payment electronically; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions. The Settlement Administrator also maintained a toll-free phone number to provide information and answer questions. *See id*. ¶ 20.  The Notice Plan was successful, as more than 47,000 claims have been submitted so far. *See id.* ¶ 21.[11] Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Visa U.S.A.*, 396 F.3d at 116 (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). In evaluating a class action settlement, courts in the

---

[10] In addition to the above-described efforts, Angeion implemented a customized and strategic Claims Stimulation program consisting of sponsored listings on a leading class action settlement website and reminder emails and post card notices.  The program used simplified messaging specifically designed to drive Settlement Class Members to the Settlement Website and ultimately submit a claim. *See* Weisbrot Decl.  ¶¶ 14-18.

[11] On November 29, 2024, Angeion also notified the appropriate state and federal officials pursuant to the Class Action Fairness Act. *See* Weisbrot Decl. ¶ 5.  In response, Defense counsel received a communication from the California Attorney General, which is detailed in the Declaration of Katherine G. McKenney Relating To Notice Under 28 U.S.C. § 1715, ¶ 6, filed concurrently.

Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).[12] Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).[13]

## A.  The *Grinnell* Factors

### 1.  *Litigation Through Trial Would be Complex, Costly, And Long*

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Settlement Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts consistently hold, unless the proposed settlement is clearly inadequate, its acceptance is preferable to continued lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. The Parties have engaged significant discovery and settlement negotiations. Sultzer Decl. ¶¶ 21-23. The next steps in the litigation would have been resolution by the Court of Defendant's anticipated Motion to Dismiss, Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would have been costly and time-consuming for the Parties and the Court, and the

---

[12] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

[13] The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

risk still existed that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all. Defendant is represented by one of the largest law firms in the world that is well-versed in class action litigation, and Defendant has indicated that it would continue to assert numerous defenses on the merits. Plaintiffs and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court or the jury could have sided with Defendant, leaving Plaintiffs and Class Members empty-handed.

The Settlement, on the other hand, permits a prompt resolution on terms that are fair, reasonable, and adequate. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas continued litigation does not. Consequently, this *Grinnell* factor weighs in favor of final approval.

2.    *The Reaction Of The Class Is Overwhelmingly Positive*

 "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotations omitted).  Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Only two claimants objected to the Settlement (as set forth below, these objectors lack standing, bear indicia of fraud, and their objections are meritless) and none requested to opt out. Weisbrot Decl. ¶¶ 23-24.  This reaction leaves no question that the Class view the Settlement favorably.  This weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

a.    *The Two Objections are Fraudulent and Meritless*

13

Only two objections to the Settlement were filed by individuals purporting to be "Zef Spaci" (ECF No. 54) and "Mike Sussman" (ECF No. 55). Class action objectors "may serve an important role in protecting class interests." *In re Petrobras Secs. Litig.*, 2018 U.S. Dist. LEXIS 161898, *15 (S.D.N.Y. Sep. 19, 2018).  Some objectors, however, seek to pervert the process by filing frivolous objections and appeals solely to obtain personal payments in exchange for voluntarily dismissing their appeals.  *See id.* (noting that "objector blackmail" has "increasingly interfered with the prompt and fair resolution of class litigation at a direct cost to class members, who may thereby be prevented from collecting the settlement funds owed to them for months and even years.").[14]

Messrs. Spaci and Sussman's objections are not a genuine attempt to improve the Settlement. First, as set forth in the Burrows Declaration, there are multiple indications that both objections are highly suspicious and may be associated with an effort to perpetrate fraudulent activity. *See* Burrows Decl. ¶¶ 20-28, 32-35. Second, neither Mr. Spaci nor Mr. Sussman have demonstrated that they purchased a Mid America Pet Food Product, as required to have standing to make an objection.  For example, at least one of the products Mr. Spaci claims to have purchased was not sold at the store during the time period when he allegedly purchased it. *See* Declaration of Brandon McKay, filed herewith, at ¶¶ 3-4. Finally, they are serial objectors. Class Counsel is aware of at least one other class action in which Mr. Sussman has objected and that objection was rejected by the Court.[15]  The objections Mr. Spaci raises were recently raised by another objector (likely

---

[14] *See also In re Ivan F. Boesky Sec.*, 948 F.2d 1358, 1368 (2d Cir. 1991)(discussing how objectors "constituting...an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal"); *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

[15] *See e.g. In re Telescopes Antitrust Litig* (N.D. Cal.) (5:20-cv-03639-EJD) (Dkt 402).

associated with Mr. Spaci; *See* Burrows Decl. ¶ 23) in a similar class action, and those were rejected by Judge Karas.[16]   Even setting aside the indicia of fraud and the objectors' lack of standing, for the reasons set forth below, the objections are meritless and should be rejected.

       *i.*     *Indicia of Fraud Associated with Mr. Spaci and Mr. Sussman*

As an initial matter, the objections should be denied because there are strong indications that they are fraudulent. As set forth in the Burrows Declaration, Angeion conducted an investigation into Mr. Spaci and Mr. Sussman, which revealed that the objectors are linked to one another, as well as to a web of individuals and addresses that are suspected to have been involved in fraudulent activity. *See* Burrows Decl. ¶¶ 20-28, 32-35.  Based on the investigations and findings described in the Burrows Declaration, both Angeion and Class Counsel have concluded that there is substantial information reasonably indicating that these are highly suspicious. *See* Burrows Decl. ¶ 36. These strong indicia of fraud are sufficient grounds, on their own, to deny the objections. *See Chambers v. Whirlpool Corp.,* 2016 WL 9451360, at *2 (C.D. Cal. Aug. 12, 2016) ("When assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.").

      *ii.*    *The Objectors Do Not Have Standing to Make Their Objections*

Regardless of whether Mr. Spaci and Mr. Sussman are who they claim to be, they do not have standing to pursue their objections because they have not demonstrated that they purchased a Mid America Pet Food Product. The Federal Rules of Civil Procedure unequivocally state that only class members can object to a class settlement. *See* Fed. R. Civ. Proc. 23(e)(5)(A).[17]   In

---

[16] *See Kessler v. Quaker Oats Co.* Case No: 24-cv-526-KMK (S.D.N.Y) (Karas, J.);ECF No 72.

[17] *See also In re Drexel Burnham Lambert Grp., Inc*., 130 B.R. 910, 923 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992) ("Only Class members have standing to object to the Settlement of a class action" because "[o]bjectors who are non-Class members lack standing to object to the fairness, reasonableness and adequacy of the Settlement.").

addition, "[t]he objector, as a party seeking to generate a court ruling, has the burden of demonstrating her standing." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 499 (S.D.N.Y. 2018).

On his claim form, Mr. Spaci alleged that he purchased the 15-lb. bag of Victor Super Premium Dog Food Select Grain Free Chicken product (the "Victor Product") at the Tractor Supply in North Versaille, PA on February 6th and March 13th, 2024. *See* Weisbrot Declaration, Exhibit I. In his objection, Mr. Spaci claims that he purchased the 15-pound Member's Mark Beef Brown Rice product from Sam's Club as well as the Victor Product from Tractor Supply. Notably, however, the Victor Product was not sold or held in inventory in the Tractor Supply store in North Versaille, PA on the dates of Mr. Spaci's purported purchases,[18] or indeed at any point during the Relevant Time Period (defined in the Settlement Agreement as purchases made between October 31, 2022 and February 29, 2024). *See* McKay Decl., ¶ 4. As such, Mr. Spaci's claims about his purchase of the Victor Product are false, rendering his claims about purchasing the other Mid America Pet Food Products highly suspect. Regardless, neither Mr. Spaci nor Mr. Sussman have provided any receipts or other proof of their purchases of any Mid America Pet Food Product (nor has Mr. Sussman even provided an approximate date or location for his purchases). This omission is particularly glaring in the case of Mr. Spaci, who alleges that he purchased Mid America Pet Food Products "online," meaning that proof of purchase should have been sent to him by email or text message. *See* ECF No. 54. Accordingly, neither objector has carried their burden to demonstrate they are members of the Class with standing to object.[19]

---

[18] One of Mr. Spaci's alleged purchase dates on his claim form (March 13, 2024) falls outside the Relevant Time Period covered by the Settlement.

[19] *See In re Initial Pub. Offering Sec. Litig.,* 2011 U.S. Dist. LEXIS 103698, *3 (S.D.N.Y. Aug. 25, 2011) (dismissing objection to class settlement because objector could not provide proof he purchased the security at issue in the case)*; Collins v. Quincy Bioscience, LLC,* 2020 U.S. Dist. LEXIS 218673, *8 (S.D. Fla. Nov. 16, 2020) (dismissing objection to class action settlement where objector was unable to prove that he actually purchased the product at issue in the lawsuit); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 100 (E.D. Pa. 2013) (striking objection that did not contain

iii.    *Mr. Spaci's and Mr. Sussman's Objections are Meritless*

**Spaci's First Objection – Reimbursement Caps and Equitable Treatment of Class Members**

Mr. Spaci asserts that he purchased a Mid America Pet Food Product, but does not have a receipt.  As a class member with no documentation, Mr. Spaci likely would not have been able to sue Defendant for his claimed losses because he has no proof of purchase.  Nevertheless, the Settlement allows him to recover $20 per bag for up to two bags based solely upon his attestation. Mr. Spaci argues that this is unfair and that he, and apparently all other no-documentation Class Members, should be allowed to submit claims for more bags at $20 each.

The Settlement allows for documented claims to be supported with more than just receipts. In fact, Sam's Club (where Mr. Spaci claims he purchased Mid America Pet Food Products) tracks and records its members' purchases and provides multiple ways by which they can obtain proof upon request. Yet Mr. Spaci does not explain why he was unable to provide such evidence, especially since doing so would entitle him to a larger recovery.  Regardless, claimants who cannot provide evidence that they purchased Defendant's products are logically treated differently than those that can because the former's claims are weaker than the latter's. Many class action settlements make this distinction and provide reduced benefits for persons who do not provide proof of purchase.[20]

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013) does not support Mr. Spaci's argument.  In that case the court was commenting on the level of proof required in that

---

"any proof whatsoever that the objector was actually a member of the class" where objector merely filed a "simple declaration" that he was prescribed the drug at issue, and did not "provide receipts that would establish class membership").

[20] *See, e.g., Rose v. Travelers Home & Marine Ins. Co.*, No. CV 19-977, 2020 WL 4059613, at *7 (E.D. Pa. July 20, 2020); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 7133805, at *7 (D. Minn. Dec. 4, 2020); *NV Sec., Inc. v. Fluke Networks*, No. CV05–4217 GW (SSX), 2010 WL 11512406, at *5 (C.D. Cal. Feb. 8, 2010).

case for two categories of documented claims, not between documented and undocumented claims. Here, Mr. Spaci seeks to file unlimited claims with no proof required. In fact, the *In re Baby Prods*. court concluded that "it would not have been unreasonable to eliminate the [no documentation] category altogether and require class members to submit documentary proof to receive any award." *Id*. And regardless, "because the parties seek approval of a nonreversionary common fund … the contention the parties designed the claims process to discourage class members from making claims is a hard one to sell." *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 499 (N.D. Ill. 2015).

Finally, Mr. Spaci never explains why, if he felt the Settlement relief was insufficient, he did not opt out and pursue his own individual claim. *Ortiz v. Fibreboard Corp.,* 527 U.C. 815 (1999), a case does not support Mr. Spaci's argument, because this is not a mandatory, no opt-out settlement as was the case in *Ortiz*.  Mr. Spaci was free to opt-out but instead chose to file a claim – likely a good choice given his lack of proof of purchase.

## **Spaci's Second and Sixth Objections – Angeion's Fraud Detection Process**

Mr. Spaci asserts that the claims process violates due process because Angeion has unfettered discretion in denying claims and Class Members have no means to challenge claim denials.  *See* ECF No. 54, pp. 2-3, 6-7. But this is plainly incorrect. The Settlement Agreement expressly includes a claim appeal process that involves an independent third-party decision maker, unrelated to Angeion. ECF 45-1, Section V, ¶12(f). Further, according to Section III, ¶3(b) of the Settlement Agreement, this Court can require Angeion to provide reports and summaries of the work performed for the Court's review. This undoubtedly would include the Court's ability to request review of any (or indeed all) claim determinations made by Angeion. Judge Karas recently rejected a similar objection in *Quaker*, noting that "Although the language of the Settlement

Agreement permits Angeion's considerable discretion in setting out its fraud-detection efforts, other courts in the Second Circuit have approved similar language."[21]

Mr. Spaci further complains that his initial claim submission was rejected by Angeion's fraud detection software, and asserts, without support, that many legitimate claims must have been denied similarly. *See* ECF 54, p. 6. To the contrary, Angeion's fraud detection system is a necessary tool to prevent fraud and preserve funds for Class Members making genuine claims. *See* Burrows Decl. ¶¶ 6-11.[22] Indeed, a court in this District recently concluded that "Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." *In re Novartis*, 2024 U.S. Dist. LEXIS 132677, *15 (S.D.N.Y. Jul. 26, 2024).[23]  Class Counsel has reviewed Angeion's fraud detection process and has been in constant contact with Angeion throughout the claims process and is fully confident that Angeion's process is thoughtfully designed to reduce false positives and is necessary to protect the Class.  *See* Sultzer Decl. ¶ 31.

Further, Mr. Spaci's experience submitting his claim undermines his own objection to Angeion's fraud detection system.  As set forth in the Burrows Declaration, Mr Spaci attempted to make a claim on January 2, 2026 but it was rejected as a result of inconsistencies.  *See* Burrows Decl. ¶ 17. As Mr. Spaci concedes in his own objection, he received a message instructing him exactly how to contact Angeion to resolve the issue. Mr. Spaci contacted Angeion on January 2, 2026, and Angeion responded by providing him a link to file a claim, which he successfully did

---

[21] *See* ECF No. 72, at p. 17 (citing *Sanborn v. Viridian Energy, Inc*., 2018 U.S. Dist. LEXIS 25639, *1 (D. Conn. Feb 16, 2018) (granting final approval to a Settlement Agreement that provided that the settlement administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims).

[22] *See also In re Telescopes Antitrust Litig*., 2025 U.S. Dist. LEXIS 70066, *28-29 (N.D. Cal. Apr. 11, 2025) ("the presence of fraudulent class action settlement claims is a growing and serious concern that could jeopardies the integrity of class action settlements.")

[23] Moreover, during a Fairness Hearing in April of this year, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"…further stating that "absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid." *Jimenez v. Artsana USA, Inc*., No. 7:21-cv-07933-VB (S.D.N.Y.)

on January 5, 2025. Burrows Decl., at ¶ 18.  Accordingly, Mr. Spaci was able to successfully make his claim with Angeion's assistance. Thus, the claims process worked as intended for Mr. Spaci and there is nothing in Mr. Spaci's experience to indicate that legitimate claims are being excluded by Angeion's fraud detection process. *See Quaker*, ECF No. 72 at p. 18 (rejecting a similar objection and holding that "[t]he information available to the Court therefore does not establish that the technology used by Angeion was somehow unreliable and/or faulty . . ."). Given Mr. Spaci's success in submitting a claim, and the clear effectiveness of Angeion in resolving issues encountered by claimants, Mr. Spaci's request for additional details regarding Angeion's purportedly inefficient fraud detection process are highly suspicious. In fact, providing this information could require disclosure of proprietary processes that could be used to steal monies from aggrieved Class Members.

**<u>Spaci's Third Objection – Appeal Rights</u>**

Contrary to Mr. Spaci's assertion (*See* ECF No. 54, Objection 3), a settlement is not unfair or unequal simply because it provides different rights and requirements for claimants based on factors such as the details of their claim. Courts have consistently approved settlements that treat larger value claims differently by requiring additional documentation.[24] Similarly, it is fair to provide individuals with documentation of their claim with a means to dispute the determination of their claim because such individuals can provide evidence to support the value of their claim. In contrast, claimants without proof of purchase cannot provide evidence to support that their claim should be different than the determination provided through the settlement. Allowing claimants with no proof of purchase or other documentation to dispute the determination of their claim is

---

[24] *See, e.g. In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 309 (N.D. Ga. 1993) (approving settlement that required greater documentation for larger claims)).

tantamount to allowing each claimant to determine their individual claim value and would waste the settlement funds available to pay Valid Claims.

**Spaci's Fourth and Fourteenth Objections – Distribution of Unclaimed Funds to _Cy Pres_**

Mr. Spaci objects to the provisions of the Settlement Agreement that distribute the funds from unclaimed checks to a _cy pres_ recipient on the grounds that the Settlement Administrator should make a second distribution of those funds to class members or that such funds should escheat to the state. This objection is meritless. First, the administrative costs of a second distribution to class members would, in all likelihood, exceed the remaining settlement funds, making a second distribution economically infeasible. _See In re Fat Brands Inc. SEC Litig_., 2025 U.S. Dist. LEXIS 144490, *4 (C.D. Cal. Jun. 17, 2025). Even if that were not the case, the Second Circuit has made it clear that distribution of settlement funds to a _cy pres_ recipient is permissible and indirectly benefits class members. _See Hyland v. Navient Corp.,_ 48 F.4th 110, 121 (2d Cir. 2022) (approving settlement where the _entire_ settlement fund was distributed to a _cy pres_ recipient).[25] Judge Karas rejected a nearly identical objection to _cy pres_ in Quaker, noting that "such schemes have been repeatedly approved by courts in the Second Circuit." _Quaker_, ECF No, 72 at p. 18 (citing cases). Moreover, both the NACA Class Action Guidelines and the ALI Principles of the Law of Aggregate Litigation disfavor escheating to the state because it fails to provide an indirect benefit to the class as a _cy pres_ distribution does.[26]

---

[25] _See also In re Remicade Antitrust Litig_., No. 17-CV-04326, 2023 WL 2530418, at *20 (E.D. Pa. Mar. 15, 2023) (rejecting similar objection as "baseless"); _Hesse v. Godiva Chocolatier, Inc_., No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *7 (S.D.N.Y. Apr. 20, 2022) (finding cy pres to be an "appropriate manner" to dispose of uncashed checks and paypal provisions).

[26] _See_ The NACA Guidelines, Guideline 6 & discussion; ALI Principles § 3.07 cmt. b ("_A cy pres_ award to a recipient whose interests closely approximate those of the class is preferable to either [escheat to the state or reversion to the defendant].").   _See also First Albany Corp. v. Am. Integrity Corp.,_ 2015 U.S. Dist. LEXIS 164559, *4 (E.D. Pa. Dec. 8, 2015) (declining to order unclaimed funds in class action settlement to escheat to the state even though it was potentially mandated by Pennsylvania law because it would be impracticable.

**Spaci's Fifth Objection – Attorneys' Fees**

Mr. Spaci argues that Class Counsel's request for 33.3% of the Settlement Fund is not tethered to "actual class outcomes." ECF No. 54 at p. 4. That argument is entirely unsubstantiated and based on a misinterpretation of Second Circuit caselaw. Mr. Spaci first argues that "the Second Circuit in *Kurtz* v. *Kimberly-Clark Corp.,* 142 F.4th 112 (2d. Cir. 2025) directed courts to determine the settlement amount to be what consumers will receive and attorney fees as their benefit." *Id*. at 4. Admittedly, it is hard to decipher what this even means. Nevertheless, that is not what the Second Circuit held in *Kurtz*. What *Kurtz did hold* is that the comparison between attorneys' fees and the class's recovery "is just one of multiple factors" to consider when assessing the fairness of any settlement, and the fact that "a court must consider this factor does not render it singularly dispositive." *Id.* at 121. *Kurtz* also held that even where requested attorneys' fees exceed class recovery, which will not be the situation here, the fees can still "ultimately be fair" as long as they have been "earned"—in part because they help serve the "deterrence functions" of class-action lawsuits. *Id*. n. 16.

Mr. Spaci then lists a slew of factors that he claims the Court must consider when determining Class Counsels' fee award. *See* ECF No. 54. at 4. He even goes as far as accusing Class Counsel of concealing "costs that will come off the top." *Id*. Mr. Spaci is wrong on both counts. First, Class Counsel's motion for fees and expenses provide the factual bases and the legal standards applicable to fee awards and expense reimbursement in this Circuit. *See* ECF Nos. 51-53. The factors that Mr. Spaci raises, without any authority to support their relevance in this context, should not be considered by this Court. Second, Mr. Spaci's purported argument that Class Counsel has "concealed" certain costs is a red herring. In fact, the first two pages of Plaintiffs' Preliminary Motion for Approval of Class Settlement clearly disclose that the "costs of notice and

22

claims administration" and payment of "Court-approved attorneys' fees" and "expenses" will be paid out of the $5,500,000 Settlement Fund and that Class Counsel will be applying for an award of 33.33% of the entire $5,500,000 Settlement Fund amount. ECF No. 52 at 1-2. Furthermore, attorneys' fee awards of 33.3% of a Settlement Fund before deduction of fees and expenses is common in this Circuit.[27]

Mr. Spaci's other unsubstantiated arguments concerning the "abusively" high billable hourly rates of some attorneys and how Class Counsel "completed identical redundant work," also lack basis and, as such, shed light on his ulterior motive for objecting. Indeed, had Mr. Spaci taken the time to conduct the type of due diligence required of an objector and read Class Counsel's fee papers, including the 7 attachments to Class Counsell's 15-page declaration, he would know that Class Counsel did not engage in identical redundant work. *See* generally ECF Nos. 53-1 through 53-7 (listing the different type of work performed by each firm throughout litigation). Had he read the papers, Mr. Spaci would have learned that the attorneys involved are experienced and highly qualified litigators that have collectively settled hundreds of class actions throughout the country over the span of more than three decades. *Id*. Finally, Mr. Spaci would have learned that the hourly rates listed in Class Counsel's fee motion have been approved by numerous courts, including a court in this very District. *See* Declaration of Carlos F. Ramirez Declaration in Support of Plaintiff's Motion for Attorneys' Fees, Expense Reimbursement, and Service Awards ¶ 13. ECF No. 53-3.

---

[27] *See Cates v. Trustees of Columbia Univ. in City of New York,* 2021 WL 4847890, *7 (S.D.N.Y. Oct. 18, 2021) ("[c]ourts in this District routinely approve fee awards of one-third of the common fund or more.") (collecting cases); *Catalano v. Lyons Magnus, LLC*, No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) (awarding one-third of a $3.5 million settlement fund for attorneys' fees in a bacterial contamination class action); *Kessler.*, 2025 WL 2258663, at *1 (awarding one-third of $6.75 million settlement fund for attorneys' fees); *Swetz*, 2021 WL 5449639, at *1 (awarding one-third of $6.5 million settlement fund for attorneys' fees); *Pompilio v. Boar's Head Provisions Co. Inc*., No. 7:24-cv-08220-PMH (S.D.N.Y. Aug. 13, 2025) (awarding one-third of $3.1 million settlement fund for attorneys' fees); *Swetz v. GSK Consumer Health, Inc*., 7:20-cv-04731-NSR (S.D.N.Y.) (awarding one-third of the common fund in attorneys' fees).

Mr. Spaci's final argument that Class Counsel did not provide enough information concerning the work performed and hours billed to justify their fee is unsupported by well-settled Second Circuit case law. In cases like the present, where lodestar is used as a cross-check, the hours documented by counsel "need not be exhaustively scrutinized." *Goldberger v. Integrated Resources*, Inc., 209 F.3rd 43, 50 (2000); *see also Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296, 298 (2d Cir. 2019)(same) *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 fn.5 (S.D.N.Y. 2017) (same). Finally, with respect to the consulting/expert fee that Mr. Spaci complains was vaguely described, as set forth in the accompanying Sultzer Declaration, that was an expense for testing approximately fifty (50) bags of Mid America products to estimate the *Salmonella* contamination rate. This testing was an invaluable factor in determining an appropriate classwide settlement, and thus securing a benefit for the Class. *See* Sultzer Decl. ¶ 11.

**Spaci's Seventh Objection – Angeion's Error Message**

Mr. Spaci speculatively asserts that Class Members had their claims "denied without notice." ECF No. 54, p. 8. He provides no support for that contention, however, and admits that when his claim was denied he received an error message which included instructions regarding how to resubmit the claim. A claimant's failure to follow instructions may result in claim denial in the same way that failure to provide supporting information could result in claim denial. *Contant v. AMA Cap., LLC*, 66 F.4th 59, 67 (2d Cir. 2023) (affirming district court decision which upheld claims administrator's rejection of claimant's claims due to lack of sufficient documentation).

Further, contrary to Mr. Spaci's contention, rejected claims should not be interpreted as opt-outs. Opting out of a class settlement requires an affirmative act by a class member and is not a default that occurs due to mere failure to properly submit a claim. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) ("[A] class-action settlement agreement binds all class

24

members who did not [timely opt out]). Under the Settlement Agreement, class members must take active steps to exclude themselves from the Settlement. (Notice Form, p. 7). If a class member wanted to opt out of the Settlement, they would not attempt to submit a claim form, but rather would mail an Exclusion Request to the administrator as required by the settlement terms. Therefore, a claimant who did not submit a claim form, even due to a system error, should not be considered to have opted out in the absence of a timely Exclusion Request.

Finally, the Notice received by potential claimants provides that "Claim Forms may be submitted via U.S. Mail." The option to submit a claim via mail allows any Class Member who was receiving an error message from the online submission portal to submit a timely claim form if they so wished.

## Spaci's Eighth Objection – Adequacy of the Fund

Without any factual support or binding authority, Mr. Spaci argues that this settlement "is a wham-bam settlement, pre-certification" that does not leave "very much money when considering that the claims process encompasses every possible purchaser, whether affected or not." ECF No. 54 at 8. While it is not clear what Mr. Spaci is trying to argue here, to the extent that he believes every possible purchaser of the Mid America Pet Food Products must be considered when determining whether this settlement is fair, reasonable and adequate, he is wrong.

In fact, the U.S. Supreme Court has held that courts must evaluate class action settlements using class-wide standards that focus on adequate representation, procedural fairness and collective benefits rather than individual member consideration. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-14 (1985)(establishing minimal due process in class actions requires adequate notice, opportunity to opt out and adequate representation class-wide because individual analysis would be administratively impossible and economically inefficient for large classes). In the

Second Circuit specifically, courts determine whether a settlement is fair, reasonable and adequate according to the nine *Grinnell* factors. As demonstrated herein, Plaintiffs have established that the Settlement readily meets the *Grinnell* factors.

**Spaci's Ninth Objection – Adequacy of the Notice Program**

Mr. Spaci himself obviously received notice of the Settlement but nevertheless complains that the notice program was inadequate. ECF No. 54 at p. 8. Mr. Spaci quotes from both the Settlement Agreement and Class Counsel's Declaration in Support of Preliminary Approval to claim that the descriptions of the notice programs contained therein are "quite vague." *Id*. at pg. 9. However, Mr. Spaci fails to acknowledge that the Settlement Administrator filed his own Declaration in Support of Preliminary Approval that provides much of the information that he claims is missing from the record. *See* ECF No. 46.

To the extent the information Mr. Spaci seeks is not contained in ECF No. 46, that is because the information was either unavailable at that time (for example, the number of documented and undocumented claims that have been filed) or is simply irrelevant.[28] The Settlement Administrator of course, is contemporaneously filing with this Memorandum an updated Declaration with information about the effectiveness of the notice program in support of Final Approval. This will enable the Court to determine whether the notice program was sufficient.

**Spaci's Tenth Objection – Angeion's Alleged Kick Backs**

The Court should also reject Mr. Spaci's unfounded allegation that Angeion is receiving kickbacks related to the prepaid debit cards provided to Class Members in this case. Mr. Spaci's claim is based solely on unproven and unadjudicated allegations against Angeion related to other

---

[28] *See, e.g., Pollard v. Remington Arms Co., LLC*, No. 13-0086-CV-W-ODS, 2016 WL 9526451, at *2 (W.D. Mo. Feb. 24, 2016) ("[T]he total amount of money expended and the manner in which it was expended does not determine the sufficiency of Class Notice").

cases. There is no evidence to suggest that Angeion has taken kickbacks or engaged in any unethical behavior with respect to the administration of this case, especially given that, as Mr. Spaci concedes, Angeion is not offering the Blackhawk/Pathword bank prepaid cards that are the subject of the unrelated litigations. Again, this attack on Angeion was raised by the objectors in *Quaker*, and was summarily rejected by Judge Karas, who issued final approval of the settlement.[29]

**Spaci's Eleventh Objection – Service Awards**

Again, relying solely on out-of-Circuit court decisions (as well as a Supreme Court case from the 1880's that pre-dates the Rule 23 class action mechanism), Mr. Spaci argues that the service award sought for each named plaintiff here is "excessive" and "not authorized." ECF No. 54. at 11-23. Courts in the Second Circuit disagree.[30]

**Spaci's Twelfth Objection – Updates Regarding Claims Data**

Mr. Spaci's complaint that Class Counsel and Angeion have not provided updates regarding the number of claims is premature and ignores the operative deadlines for the claims submission process. The deadline for opt-outs and objections is set forth in the Preliminary Approval Order as January 6, 2026. (Order, p. 9). The claim deadline is February 5, 2026. *Id.* Plaintiffs' counsel cannot determine the number of claims until the claim deadline. Notwithstanding the ongoing claim submission period, Plaintiffs' counsel and Angeion have included the requested information regarding claim submissions to date, objections and opt-outs in this Motion for Final Approval.

---

[29] The contractual relationship between Angeion and Blackhawk was described in declarations submitted to the Northern District of California in connection with the *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843-VC (N.D. Cal.); *Cabrera, et. al. v. Google, LLC*, 5:11-cv-01263-EJD (N.D. Cal.); and *Brooks v. Thomson Reuters Corp.*, 3:21-cv-01418-EMC-KAW (N.D. Cal.). In each case, the courts granted final approval and authorized the settlements to go forward utilizing the E-Mastercard payment option

[30] *See McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y.2006)(approving service awards between $25,000 and $35,000 each to five plaintiffs from $2.8 million settlement fund); *Wright v. Stern*, 553 F.Supp.2d 337, 345 (S.D.N.Y. 2008) (approving $50,000 service awards for each of 7 plaintiffs from $11.9 million settlement fund); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards for each of four plaintiffs from $440,000 settlement fund); *Chavarria v. New York Airport Service, LLC*, 875 F.Supp.2d 164 (2012)(approving $5,000 service award from $135,750 settlement fund).

**Spaci's Thirteenth Objection – Plaintiffs' Signatures on the Settlement Agreement**

Mr. Spaci speculates that the Class Representatives did not approve of the Settlement because they did not sign the Settlement Agreement. However, the evidence in the record demonstrates that the Class Representatives reviewed and approved the Settlement Agreement. *See* ECF No 53, page 15. Mr. Spaci's rank speculation that "Perhaps Class Counsel did not contact them in any way and is acting unilaterally" (ECF No. 54 at 13) is contrary to the record.

**Spaci's Fifteenth Objection – Use of Postmarks**

Mr. Spaci's complaint about the use of postmarks for claim, exclusion, and objection deadlines is not a legitimate objection. While in some cases, the postmark on a claim may not indicate the date that the claim was first received, the Claims Administrator needs a method by which to determine, to a reasonable level of accuracy, the date on which a claim was mailed. A postmark provides proof of the date of mailing to within a day or two. In the absence of a more precise indicator of the date of mailing, using the postmark to determine whether a mail-in claim was timely submitted is fair and reasonable and is routinely use in class action settlements..

Indeed, Mr. Spaci admits that it is possible to get a postmark reflecting the date of mailing if you take the mail to the counter at the post office and request a manual postmark, which Mr. Spaci appears to have done himself in this case (his objection letter is postmarked January 6, 2025). Claimants mailing their claim forms near the end of the claim period can request a manual postmark to establish that their claim is timely.

**Spaci's Sixteenth Objection – The Definition of the Class**

Mr. Spaci argues that defining the class to include "All persons and entities … who purchased one or more of the Mid America Pet Food Products" sweeps in unrelated products and thus was "meant to protect the defendant from claims unrelated to the recall" and makes the

settlement unfair because defendant sells "over $30 million per year" of pet food.  ECF No. 54, p. 15.  To be clear, "Mid America Pet Food Products" is a defined term that "means the pet foods listed in Exhibit D sold to consumers in the United States that were included in Defendant's recalls announced on September 3, October 30, or November 9, 2023" and specifically excludes Defendant's other products.  SA § I.19.  Only those persons who purchased one of the products on Exhibit D are class members.

Mr. Spaci further argues that persons who bought an affected product and used it without knowledge of the recall were not harmed. Not true. Every person who purchased potentially affected products was harmed because they each purchased a product that was recalled and thus worth less than they paid.[31]  Accordingly, all consumers who purchased a Mid America Pet Food Product during the Relevant Period were economically harmed and are properly defined as Class Members.

**Spaci's Seventeenth Objection – The Waiver of California Code Section 1542**

Mr. Spaci also objects to the Settlement on the grounds that it contains a waiver of unknown claims, including waiver of rights under California Civil Code section 1542.  The Settement Agreement, however, makes it clear that the released claims are limited to claims "for economic losses and physical injuries to pets relating to in any way Defendant's recalls of Mid America Pet Food Products due to the presence of Salmonella . . . ." SA  § I.27. Moreover, as Judge Karas noted in *Quaker*, California Civil Code § 1542 waivers "are regularly approved by courts in the Second

---

[31] *See, e.g., Huertas v. Bayer US LLC*, 120 F.4th 1169, 1175–76 (3d Cir. 2024) ("Since the contaminated products contained a defect that rendered them unusable, the products were worth less than their full purchase price.  To hold otherwise would be to conclude that an unusable product is worth the same as a usable one—a conclusion that resists logic.").

Circuit because they are limited by the identical factual predicate language." *See Quaker*, ECF No. 72 at p. 19.[32]

### Spaci's Eighteenth Objection – The Privacy Policy

Mr. Spaci's objection regarding Angeion's privacy policy is similarly meritless. Angeion's privacy policy explicitly discloses, "We receive personal information about you from our third-party clients". (https://www.angeiongroup.com/privacy-policy). The privacy policy applies only to users of Angeion's website and information submitted through said website. (https://www.angeiongroup.com/privacy-policy). As set forth in the Notice, claimants are free to reject Angeion's clearly disclosed privacy terms by mailing their claim to Angeion.

### Spaci's Nineteenth Objection – The Objection Procedure

Mr. Spaci's complaints regarding the objection process are equally meritless. Specifically, Mr. Spaci asserts that requiring objections to identify consulting attorneys and prior cases in which they objected is unduly onerous. *See* ECF No. 54, p. 17. Courts in this Circuit and elsewhere, however, have consistently approved settlements with such requirements, which are necessary to distinguish between objections made by bona fide class members with legitimate concerns about the settlement and bad faith complaints by opportunistic professional objectors, like those advanced by Mr. Spaci and Mr. Sussman.[33]  Nor is there any merit to Mr. Spaci's complaint that

---

[32] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct.") (internal citations omitted); *In re Telescopes Antitrust Litig.*, 2025 U.S. Dist. LEXIS 70066, at *29 (denying objection of objector Pat Zhen) ("California Civil Code § 1542 waivers are commonplace in class action settlements. Such waivers are uncontroversial in the class action context because, like all class settlements, the extent of any release is constrained by the identical factual predicate doctrine.").

[33] *See e.g. Leonard v. John Hancock Life Ins. Co. of N.Y.*, 2022 U.S. Dist. LEXIS 31689, *11 (S.D.N.Y. Jan. 10, 2022) (approving a settlement that required objectors to, inter alia, provide "a list of any objections by the Settlement Class Member and/or counsel in any class action settlements submitted to any state or federal court in the United States in the previous five years."); *Thornton v. Mindvalley, Inc.*, 2025 U.S. Dist. LEXIS 269267, *9 (C.D. Cal. Apr. 10, 2025) (approving settlement which required objectors to provide "a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years."); *In re Medstar Health Data Sec. Incident*, 2025 U.S. Dist. LEXIS 203633, *10 (D. Md. Jun.

the mailing requirements for making objections are unduly onerous. Clearly, both Mr. Spaci and

Mr. Sussman were able to submit their objections such that they were received and publicly

docketed. Indeed, neither Mr. Spaci nor Mr. Sussman allege that they encountered any difficulties

in submitting their objections. In *Quaker*, Judge Karas rejected similar complaints based on purely

hypothetical difficulties in submitting objections. *See Quaker*, ECF No 72 at pp. 19-20.

### Spaci's Twentieth Objection and Sussman's Objection – Entity Claims

Both Mr. Spaci and Mr. Sussman raise an objection to the process for filing a business

entity claim under the Settlement. As an initial matter, Mr. Spaci does not have standing to lodge

this objection. "For a class action objector to have standing to make an argument, he 'must seek

relief for an injury that affects him in a 'personal and individual way.'" *Pls' Consumer Class v.*

*Hyundai Motor Co.*, No. 24-7080, 2026 WL 64285, at *1 (9th Cir. Jan. 8, 2026) (quoting

*Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 n.1 (1992)). Mr. Spaci is not a business entity, nor does he claim to represent a

business entity. As such, he lacks standing to make this argument. *See id*.

Setting Mr. Spaci's lack of standing on this point aside, both he and Mr. Sussman argue

that the claim form does not contain instructions for a business entity to make a claim, and instead

just asks for a first and last name. Despite the objectors' alleged issues with the Claim Form, no

business entity owners (including Mr. Sussman himself) ever reached out to Angeion to complain

that they were unable to file a claim. *See* Weisbrot Decl. ¶ 26. More importantly, entities were, in

fact, able to make claims using the claim form provided by Angeion by simply entering the name

---

16, 2025) (approving settlement requiring objectors to disclose "the number of times the objector has objected to a
class action settlement within the five years preceding the date that the objector files the objection, the caption of each
case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's
prior objections that were issued by the trial and appellate courts in each listed case."); *Springer v. Johnson*, 2026 U.S.
Dist. LEXIS 2848, *8 (D.R.I. Jan. 5, 2026) (requiring "a statement identifying all class action settlements objected to
by the Settlement Class Member in the previous five (5) years.").

of the business in the spaces on the claim form for "first name" and "last name." *See id.* Alternatively, entity owners could contact Angeion by phone or email, as indicated on the Claim Form for assistance in completing their claim, *See id.*[34]

Nonetheless, in an effort to make entity claims easier, starting on January 21, 2026 (weeks before the end of the claims period) Angeion posted a revised claim form on the website which included a line to list a business entity. Angeion also contacted Mr. Sussman directly by email requesting that he provide information about his business in order to facilitate an entity claim on his behalf. As of the date of filing this memo, Mr. Sussman has not responded to Angeion's email. *See* Weisbrot Decl. at ¶ 26. Accordingly, any alleged issues with making business entity claims appear to have been isolated to Mr. Sussman, and were mooted by the change to the Claim Form.

3.      *The Stage of The Proceedings And The Amount of Discovery Completed*

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013).

As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including obtaining extensive sales, distribution, and marketing information regarding the Mid America Pet Food Products, Defendant's pet food testing records during relevant time period, Defendant's historical and current financial condition, and the improvements and protocols put in place by Defendant to prevent future contamination. Sultzer Decl. ¶ 21. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. *Id*. In addition, Class Counsel conducted their own testing of the Products that

---

[34] Class Counsel successfully submitted two test claims on behalf of businesses utilizing the original electronic claim form on the settlement website. Sultzer Decl., ¶ 12.

allowed them to estimate the percentage of Products that were actually contaminated. *See id* at. ¶ 23. Thus, Plaintiffs had sufficient information to evaluate the claims of the Class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.'"). In fact, a number of similar consumer class actions cases in this Court were settled and granted final approval at similar procedural stages.[35]

### 4.    The Risks of Establishing Liability And Damages

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.,* the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*. In weighing the risks of certifying a class and establishing liability and damages, a court "must only weigh the likelihood of success by the plaintiff class against the relief offered by

---

[35] *See Kessler v. Quaker Oats Co.* Case No: 24-cv-526-KMK (S.D.N.Y) (Karas, J.); *Catalano v. Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Pompilio v. Boar's Head Provisions Co. Inc*., No. 7:24-cv-08220-PMH (S.D.N.Y.) (Halpern, J.); *Patora v. Tarte, Inc*., Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J.); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *See also* Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) (***I think there is definitely a premium to be taken for the fact that the case was settled at an early stage***. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. ***And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts***."); *See Swetz v. The Clorox Company*, Case No. 22-CV-9374 (S.D.N.Y.) (Tr. Final Approval Hearing) (Judge Halpern stated "I'm delighted that you were able to resolve this. I think very highly of lawyers who actually take on these matters. And I noticed, with the Court's approval, there was a fair amount of self-organization at the beginning of this I think that kind of approach to a District Court Judge is so superior to the other approach which I have run into on occasion, which is the lawyers are fighting and bickering over who should be lead counsel, who should be Class Counsel. And the sniping and the unnecessary commenting about the other's abilities or experience is less enjoyable than dealing with you. So I very much appreciate what you've done. I think you did an excellent job.");

the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal. Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Mid America Pet Food Products contain or risked containing *Salmonella*, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to the extent of salmonella contamination or risk of contamination, the amount of bacteria in each contaminated product (if any), the health effects of exposure to salmonella and the calculations of damages. Additionally, Defendant will certainly argue that damages in this matter would be extremely limited because only a very minimal amount of the Mid America Pet Food Products were at risk of being contaminated and a significant portion of the potentially contaminated products never made it into the hands of consumers. Thus, "while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendant], they also recognize the risks and uncertainties inherent in pursuing the action through [the pleadings,] class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. The proposed Settlement alleviates these risks and provides a substantial benefit to the Settlement Class Members in a timely fashion. Accordingly, these *Grinnell* factors are met.

### *5. The Risk of Maintaining Class Action Status Through Trial*

As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form a class-wide price premium. While Plaintiffs believe they could establish the existence of such a premium

to the Court's satisfaction, as has occurred in a number of Courts in this Circuit (*See Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium"))[36], this proposed settlement eliminates the unavoidable risk that they cannot. Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022). Given the risks involved, this factor weighs in favor of final approval.

> 6.    *The Ability of Defendant To Withstand Greater Judgment*

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014). Nevertheless, Defendant has produced, and Class Counsel have reviewed, substantial documentation regarding Defendant's financial condition since the Recalls. *See* ECF No 45 Goldenberg Decl. at ¶ 21.[37] Given Defendant's financial situation there is no assurance that it could withstand a greater judgment, and this factor weighs in favor of final approval.

> 7.    *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the

---

[36] Notably, calculating a price premium would not require data regarding the actual price of the products, or the existence of less expensive competing products because price premiums damages are calculated using surveys that evaluate hypotheticals to determine what consumers would pay the products if they knew about the potential contamination (or whether they would be willing to purchase the products at all). *See Price v. L'Oreal USA, Inc., 2018 U.S. Dist. LEXIS 138473, *27(S.D.N.Y. Aug. 15, 2018).*

[37] The Parties will provide this same financial and operational information to the Court for in camera inspection if the Court so requests.

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Further, in the Second Circuit, courts are required to calculate the value of a settlement in terms of the amount of relief made available to class members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."). "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account - among other substantive considerations stated in the rule - the proposed attorneys' fees and incentive awards." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

The relief here is within the range of reasonableness, especially considering all the attendant risks of litigation and Defendant's financial condition. *See Rodriguez v. CPI Aerostructures, Inc.*, 2023 U.S. Dist. LEXIS 26891, *43 (E.D.N.Y. Feb. 16, 2023).[38]

Moreover, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best result at trial. Considering the additional, non-monetary relief ($7 million worth of business practice changes and capital improvements to its

---

[38] The amount of the common fund is in line with recent similar pet food salmonella contamination class actions that have been granted final approval. *See e.g. In re Midwestern Pet Foods Mktg., Sales Practices, Sales Practices & Product Liability Litig.*, No. 3:21-cv-00007 (S.D. Ind.) (Dkt. 157, approving $6.375 million common fund settlement).

production and food safety programs), the combined financial benefits from this settlement are approximately $12.5 million.   Plaintiffs' estimate that the total sales of the Products that are the subject of the litigation and which are potentially contaminated and potentially reached consumers' hands during the relevant time period is approximately $45 million (using a 1% contamination rate, which is higher than the actual contamination rate based on Plaintiffs' own testing).  The $5.5 million recovery for the Class under the Settlement represents approximately 12.2% of Defendant's potential liability under a total disgorgement theory.[39] This alone is a very significant recovery, especially considering the difficulty in successfully litigating these types of cases, the risks of losing before or at trial, and how efficiently this Settlement was achieved.

Plaintiffs' full disgorgement theory would have been challenged by Defendant at trial and may not have succeeded, as Defendant likely would argue that even contaminated products are not completely worthless.  As a result, Plaintiffs' damage model may have been limited to the premium class members paid over what they would have paid had they known about the contamination or risk of contamination. This kind of "price-premium" damages analysis is widely accepted in consumer deception cases in this Circuit.

Based on Class Counsel's experience in these kinds of consumer product contamination cases, as well as discussions with an economic expert who frequently uses conjoint analysis to calculate damages in similar cases, the best-case, price-premium scenario for products like this is generally around 30% of the purchase price. Here, the Settlement Class's best day under a 30% price premium model would be $15 million dollars, and the common fund provides 36.6% of this value.   Thus, the class here is recovering somewhere between approximately 12.2% of what it

---

[39] This percentage was calculated using the $5.5 million common fund.  Using the $12.5 million in total benefits as a baseline, the Settlement represents approximately 27.7% of total disgorgement damages in this case.

might have recovered at trial (full disgorgement) and 36.6% of the price premium.[40]  Even on the

low end, this is a significant recovery.

**B.      The Rule 23(e)(2) Factors**

       *1.      Class Counsel and Plaintiffs Adequately Represented The Class*

As set forth in Argument § IV.D. *supra*, "plaintiffs' interests are aligned with other class

members' interests because they suffered the same injuries." *In re GSE Bonds Antitrust Litig.*, 414

F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an interest in

vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at

692 (internal quotations omitted).  Further, courts have previously found that Plaintiffs' attorneys

adequately meet the obligations and responsibilities of Class Counsel. *See* Dkt. 45-2 (Firm

Resumes of Class Counsel).

       *2.      The Settlement Was Negotiated At Arm's Length*

"If a class settlement is reached through arm's-length negotiations between experienced,

capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a

presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y.

2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their

fairness." *Id*.  Here, both Class Counsel and counsel for Defendant are experienced in class action

litigation. Sultzer Decl. ¶¶ 33 & 44. Moreover, the parties participated in a mediation before Judge

Welsh and engaged in protracted settlement discussions. *Id*. ¶¶ 21-26.

       *3.      The Settlement Provides Adequate Relief To The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii)

the effectiveness of any proposed method of distributing relief to the class, including the method

---

[40] Using the total value of the Settlement (including $7 million in value created by changes to Defendant's business practices), the Settlement represents 83.3% of the total potential damages.

of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement has met each of these *Grinnell* factors. Argument I.A. *supra*. As to "the effectiveness of any proposed method of distributing relief to the class," Class Members need only submit a simple claim form to receive significant monetary relief. This is a reasonable method of distributing relief to Settlement Class Members. *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018). Regarding "The terms of any proposed award of attorneys' fees," in the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. Here, Class Counsel has petitioned the Court for $1,833,150 in fees. This is one-third of the $5.5 million in monetary relief that Class Counsel has made available, which is reasonable according to this Circuit.[41] As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3pd at 696, no such agreement exists other than the Settlement.

---

[41] *See Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

### 4. The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47. Although Class Members with Proof of Purchase or documentation of their pets' injuries will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably.[42] The proposed Settlement treats Settlement Class Members equitably relative to each other and is specifically designed to apportion relief among Settlement Class Members relative to the harms they have suffered and the respective strength of their claims. For instance, Settlement Class Members who incurred hefty out-of-pocket expenses seeking medical treatment for their dogs' illnesses are entitled to a greater share of Settlement proceeds than Settlement Class members who discarded recalled pet food. SA §V, ¶¶5-12. Further, all Class Members' claims are subject to upward or downward pro rata adjustment. A *pro rata* distribution has been found by courts in this Circuit to be equitable.[43]

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated: January 26, 2026

---

[42] *See Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase).

[43] *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata distribution plan "appears to treat the class members equitably … and has the benefit of simplicity").

Respectfully submitted,

/s/ Jason P. Sultzer_____
Jason P. Sultzer
**SULTZER & LIPARI, PLLC**
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: 513-345-8297
Fax: 513-345-8294
jgoldenberg@gs-legal.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-500
mreese@reesellp.com
snam@reesellp.com
cramirez@reesellp.com

Nick Suciu III, Esq.
**BRYSON, HARRIS, SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301

41

Tel: (313) 303-3472
nsuciu@milberg.com

Samuel R. Jackson
**CARNEY BATES & PULLIAM,
PLLC**
519 W 7th Street
Little Rock, AR 72201
Tel: 501-312-8500
Fax: 501-312-8505
rpulliam@cbplaw.com
sjackson@cbplaw.com

Brandon M. Wise
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Telephone: 314-833-4825
Email: bwise@peifferwolf.com

Andrew R. Tate
**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
Telephone: (404) 282-4806
Email: atate@peifferwolf.com

*Attorneys for Plaintiffs and Classes*

42