UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x

JAMES FILARDI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

23 CV 11170(NSR)

TELEPHONE CONFERENCE

MID AMERICA PET FOOD, LLC,

Defendant.

---------------------------------------x

United States Courthouse
White Plains, N.Y.
February 6, 2026

Before: THE HONORABLE NELSON S. ROMÁN, District Judge

APPEARANCES

GOLDENBERG SCHNEIDER, LPA
Attorneys for Plaintiffs
JEFFREY SCOTT GOLDENBERG
and
LEVIN, SEDRAN & BERMAN
Attorneys for Plaintiffs
CHARLES E. SCHAFFER
and
SULTZER & LIPARI, PLLC
Attorneys for Plaintiffs
JASON P. SULTZER
JEREMY FRANCIS SULTZER
and
REESE, LLP
Attorneys for Plaintiffs
CARLOS RAMIREZ

GOODWIN PROCTOR, LLP
Attorneys for Defendant
KATHERINE McKENNEY

THE DEPUTY CLERK: Docket 23 CV 11170, Filardi v. Mid America Pet Food, LLC.

Will counsel please state their appearance for the record, beginning with the plaintiffs.

MR. SULTZER: Jason Sultzer from Sultzer & Lipari.

Good morning, your Honor.

THE COURT: Good morning.

MR. FRANCIS: This is Jeremy Francis for plaintiff, also from Sultzer & Lipari.

Good morning, your Honor.

MR. GOLDENBERG: Jeff Goldenberg for the plaintiffs, Goldenberg, Schneider, Cincinnati, Ohio.

Good morning.

MR. SCHAFFER: Good morning, your Honor. Charles Schaffer, Levin, Sedran & Berman, Philadelphia, Pennsylvania.

MS. McKENNY: And good morning, your Honor. For the defendant, Mid America Pet Food, Katherine McKenney of Goodwin Procter.

THE COURT: All right. Good morning, everyone.

MR. RAMIREZ: Good morning.

THE COURT: I'm sorry. There's one more person who wants to be on the record?

MR. RAMIREZ: Carlos Ramirez, Reese, LLP, Chappaqua, New York.

THE COURT: All right. Good morning to everyone.

This is a proceeding in the name of Filardi, et al. v. Mid America Pet Food, LLC, docket number 23 CV 11170, and this matter is on for purposes of an application seeking final approval of a class action settlement.

I understand that one attorney will be speaking on behalf of all the plaintiffs in this case.

I just basically have a few questions.

One, if you can just briefly summarize the nature of the claims in this action.

MR. SULTZER: Yes, your Honor.

So the settlement and conference is four different lawsuits, three of which started out in Texas, one of which before your Honor, and then we were all openly able to consolidate them before your Honor, and they involve a nationwide recall of contaminated dog food that had a dangerous form of bacteria in them.

THE COURT: Okay. And tell me about the settlement proposal and how that came about.

MR. SULTZER: Yes. So, your Honor, although faced with a complex task, the plaintiffs' counsel on the phone were able to self-consolidate, avoiding a lengthy leadership fight, and then we were ultimately able to get the case before retired U.S. Magistrate Judge Diane Welsh out of JAMS, who is one of the most respected mediators in the country for these types of complex cases. And the settlement we were able to reach before

Judge Welsh is an excellent one as it not only includes a $5.5 million none reversionary common fund, but it also includes an additional $7 million in nonmonetary relief in which the defendants have made significant improvements to their manufacturing processes and food safety protocols.

Since your Honor has granted preliminary approval conditionally certifying the class for settlement purposes, the claims administrator has implemented a successful and robust notice plan delivering approximately an 84 percent reach to the target audience resulting as of today in over 58,000 claims with no opt-outs and only two what I call so-called objections, which are contaminated themselves with significant indicias of fraud as both the claims administrator, who's on the phone today, and our investigator, Greg Holmes, who is a former U.S. Marshal in the Eastern District, who is also on the phone today, can elaborate further if your Honor desires.

THE COURT: That's not necessary.

MR. SULTZER: Okay. Thank you, your Honor.

So ultimately, your Honor, the settlement is a resounding succes and, for a number of reasons, satisfies both the Grinnell factors, the Goldenberg factors with respect to our fee request, especially when viewing all of these factors holistically, as is set forth by the Second Circuit in the Moses case in the ^23E2 factors.

If it's okay with your Honor, I can just highlight

what I think are the key points with those factors because I think our papers are pretty comprehensive, so I could get through this pretty quickly if your Honor permits.

THE COURT: Yes, please.

MR. SULTZER: Okay.

So the first thing that jumps out to me, your Honor, is the reaction of the class. And importantly, as I mentioned, there's no opt-outs. We have two baseless objections. Ultimately the class has spoken and has overwhelmingly endorsed and embraced the settlement and our request for fees. And since your Honor today is acting as the fiduciary for the class, this fact is critical and should help guide your opinion in granting final approval and our fee award.

Another factor, your Honor, that jumps out to me was one of the Grinnell factors where we're not sure that the defendants would have been able to sustain a judgment in this case let alone to get through discovery based on some significant financial difficulties at the time of the settlement. So that was another factor that drove this settlement, and we believe it was a very important one.

With regard to the settlement itself, your Honor, one of the factors is the range of reasonableness. The class members who actually submitted a claim are going to get back nearly the full purchase price on the economic claims. So they'll get back between $20 and $40, which is what they paid

for the food. And those who are submitting claims for the pet injury or death claims, they'll be getting back approximately the full price, as well, from what we can see now that was set forth in the agreement, which was $50 for an injury and I believe $100 for a death. So that's an excellent result. And if you look at that result and also compare it to what we would have gotten if we tried the case and even, on our best day at trial, hit a home run, we still were between a range of 12 and 86 percent, depending on what factors drive that, but even on the low end, it's very significant and obviously, on the high end, it's significant.

So we believe the settlement is well within the range of reasonableness and falls square in line with a number of other contamination cases that I and other attorneys on this phone have successfully settled, including before this Court, Judge Karas, Judge Halpern and Judge Briccetti.

Another factor, Judge, is that the negotiations were done at arm's length with highly respected mediator. There were hard-fought negotiations against one of the largest defense firms in the country.

And finally, your Honor, with respect to the attorneys' fees that we're asking for, we're asking your Honor for about a 1.34 multiplier for our fee. So we're asking for a total of a third. We're asking for a third of the common fund. So with the third, there would be about -- left for the class

about -- close to $3.2 million. So, here, even with a third and if your Honor grants the 1.34 multiplier, all the claimants are going to receive nearly the full purchase price back of the products they purchased. So there's no imbalance to cast any doubt on the fairness of the settlement, especially combined with the $7 million nonmonetary relief, which we're not even including for the purposes of our fee request. And that sort of falls squarely in line with the Moses Second Circuit case and the Kurtz-Kimberly Clark Second Circuit case.

So overall, your Honor, I mean, those are the key things that jump out to me as sort of the key factors. I think it's a great settlement and we're requesting that your Honor approve it. We deem it to be fair, reasonable and adequate. And we're also asking your Honor to approve our fee request for a third, which includes a 1.37 multiplier.

And I may add, your Honor, our lodestar is actually going to continue to increase because I anticipate that the objectors are going to appeal, as they have done in a similar case, in Quaker Oats with Judge Karas. So we're preparing openly for that, and we expect to be back before your Honor when we file motions to request that they post a bond in order to appeal, which we've also successfully done with Judge Karas as well.

So that's sort of in a nutshell, your Honor. I don't know if you have any questions.

THE COURT: Just so that the record is clear, the legal fees are not inclusive of litigation expenses, correct?

MR. SULTZER: Correct, your Honor, yes. So what we did here was we capped the expenses at $35,000. Our expenses actually have gone over that and continue to go over that. I believe now they're closer to $50,000. But we're not asking to take that out of the fund. We're still going to leave that in for the class. So we're actually out of pocket on that matter.

THE COURT: Okay. And you're also seeking a service fee to the named plaintiffs. Am I correct?

MR. SULTZER: Yes. So we have multiple named plaintiffs. I think the total service fees, your Honor, come to about 90,000 -- about $95,000. We're requesting $5,000 for each of them with the exception of one, which was plaintiff Nunez, because she turned down a settlement early on that she could have gotten, so we thought it made sense to try to get her a little more, which is $10,000.

THE COURT: Okay. And is there anything else the plaintiff wants to bring to the Court's attention?

MR. GOLDENBERG: Your Honor, this is one of the plaintiffs' attorneys, Jeff Goldenberg.

The only thing I wanted to add, and Jason summarized everything quite succinctly, is there's two kinds of claims that are being made and have been made in the case, documented and undocumented. The caps of $50 for a sick pet and $100 for

a deceased pet are for undocumented claims. The up to $40 for pet food purchases is also for undocumented claims. So to the extent a claimant submits a documented claim for the death of a pet or a dog and seeks damages above $100, we anticipate that the documented damage claims will be paid at or near a hundred percent of what they seek given what we know about the net settlement fund amount, but will be available to pay these claims, assuming the Court grants the service awards, expense reimbursement and attorneys' fees.

So, for example, I spoke with -- or we spoke here at our firm with a claimant yesterday -- yesterday was the claim deadline, by the way, your Honor -- and she was submitting a documented claim. Their particular dog was a service dog that they had trained. Unfortunately, the dog passed away. And they were seeking damages well in excess of the $100 undocumented cap. And so to the extent that claim gets approved, and I see no reason why it wouldn't, they would be receiving thousands of dollars as a result of this settlement.

THE COURT: Okay. Anything further from the plaintiffs?

I'll take that pause to mean no.

And anything further from defense counsel?

MS. McKENNEY: No, your Honor. I have nothing to add on behalf of defendant. Thank you.

THE COURT: Is it fair to say that it's the

defendant's position that this is a fair settlement in light of what was discussed in the mediation sessions?

MS. McKENNEY: Yes. The defendant does not oppose plaintiffs' motion.

THE COURT: Okay. All right. So I have the proposed order granting final approval. It's docketed I believe under docket 62 in this case. Am I correct?

MR. SULTZER: I think it's 63, your Honor.

THE COURT: Well, there's two orders. I have 62 and 63.

MR. SULTZER: Yes. I think 62 -- I don't know what happened with 62. Maybe Jeremy on the phone could help. But I believe 62 had a lot of blanks in it.

THE COURT: Okay. So 63 is the final version that the plaintiffs have submitted to the Court and that's the order that the parties want the Court to consider. Am I correct?

MR. SULTZER: Yes, yes, your Honor.

THE COURT: All right.

THE DEPUTY CLERK: Your Honor, excuse me.

THE COURT: Sure.

THE DEPUTY CLERK: It's Gina.

Number 62 had a filing error.

THE COURT: Okay. That's fine, that's fine.

THE DEPUTY CLERK: So that's why 62 wasn't really considered.

THE COURT: Okay.

All right. So I'll review 63 and I'll deem the matter fully submitted.

Thank you, everyone.

MR. SULTZER: Thank you, your Honor.

MS. McKENNEY: Thank you, your Honor.

----